# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JESSICA KIRINCICH,

      Plaintiff,

v.

ILLINOIS STATE POLICE,

      Defendant.

Case No. 15-cv-02131

Judge Matthew F. Kennelly

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS FOR WHICH THERE ARE NO GENUINE ISSUE

Pursuant to Local Rule 56.1(a)(3), Plaintiff, Jessica Kirincich, by and through her undersigned counsel, states as follows as her Response to Defendant's *Statement of Undisputed Material Facts for Which There Are No Genuine Issue*:

### A. Parties and Background

1.      Plaintiff, Jessica Kirincich, is an Illinois resident who resides in this District. (Defendant Illinois State Police's Answer to Complaint and Affirmative Defenses, Docket #10, ¶1)

**Response.**    Undisputed.

2.      Defendant, ISP, is a governmental entity established under the laws of the State of Illinois. (Defendant Illinois State Police's Answer to Complaint and Affirmative Defenses, Docket #10, ¶2)

**Response.**    Undisputed.

3.      ISP operates a Medical Review Board ("MRB") that reviews, monitors and makes decisions on the continued duty of ISP Officers/Troopers who have sustained an injury or suffer from a physical/mental impairment that prevents the officer from performing at full duty. (Exhibit A, Abbott Dep. pp. 17, 22-25)

**Response.**    Disputed.  The cited deposition testimony does not establish all of the specific duties of the Medical Review Board, as asserted above.  The cited testimony instead

establishes the process by which Abbott learned Board procedures, Abbott's understanding of the general review practice of the Board, and Abbott's understanding of the Board's policies on reasonable accommodation and how they were applicable to Plaintiff.

4.     Lt. Col. Scott Abbott, ("Abbott") served in the Division of Administration for ISP from 2012 until his retirement on December 1, 2013 and was a member of the MRB from January 2013 to November 2013. (Exhibit A, Abbott Dep. pp. 14-16, 37)

**Response.**     Undisputed.

5.     Lt. Col. Todd Kilby, ("Kilby") served in ISP's, Division of Operations, Field Operations Command from December 2013 until his retirement from ISP in December 2014 and occasionally substituted as a voting member on the MRB in 2013 and 2014.  (Ex. B, Kilby Dep., pp. 11-16)

**Response.**     Undisputed.

6.     Col. Agnes Kindred-Johnson ("Johnson") served as the head of ISP's Division of Internal Investigations from December 2011 until her retirement in December 2013 and served on the MRB as a voting member from December 2011 to December 2013.  (Ex. C, Kindred-Johnson Dep. pp. 8-9, 18-19)

**Response.**     Disputed.  The cited testimony does not establish that Johnson served as the "head of ISP's Division of Internal Investigations."  It, instead, establishes that she was a Colonel in the Division of Internal Investigation.

7.     Col. Jill Rizzs ("Rizzs") has served as the head of ISP's Division of Forensic Services from July 1, 2013 and substituted as a voting member on the MRB from March 2013 until she became a full voting member on or about July 1, 2013.  (Ex. D, Rizzs Dep. pp. 9, 12-16)

**Response.**     Disputed.  The cited testimony does not establish that Rizzs served as the "head of ISP's Division of Forensic Services."  It, instead, establishes that she was a Colonel of the Division of Forensic Services.  Furthermore, the cited testimony does not establish that Rizzs was substituted as a voting member on the MRB from March 2013 until she became a full voting member on or about July 1, 2013.

8.       Lt. Robert Sgambelluri ("Sgambelluri") served as ISP's Chief EEO Officer from early 2013 until his retirement in 2014. (Ex. E, Sgambelluri Dep. pp. 24, 30)

**Response.**      Undisputed.

9.       Carrie Santos ("Santos") has served as the Coordinator for the MRB from approximately 2007 to the present. (Ex. F, Santos Dep. p. 13)

**Response.**      Undisputed.

## B.    Jurisdiction and Venue

10.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §1331. In addition, the State of Illinois has enacted a statue, 745 ILCS 5/1.5(d), that specifically allows its employees to bring an action in Federal Court under the Americans with Disabilities Act ("ADA"). (Defendant Illinois State Police's Answer to Complaint and Affirmative Defenses, Docket #10, ¶4)

**Response.**      Undisputed.

11.      This Court can exercise personal jurisdiction over ISP and venue is proper in this District because the acts complained of took place in this District, and at all relevant times ISP regularly and continuously transacted and was doing business within this District. (Defendant Illinois State Police's Answer to Complaint and Affirmative Defenses, Docket #10, ¶5)

**Response.**      Undisputed.

## C.    Plaintiff's Diabetes and Treatment

12.      Plaintiff is a Type-1 diabetic and was diagnosed as such at age 8. (Ex. H, Pl. Dep. pp. 15-16, Ex. G, Dr. Yohay Dep. p. 11)

**Response.**      Undisputed.

13.      Dr. Ilene Yohay is an endocrinologist and has treated Plaintiff's diabetes from December 27, 2000 to the present. (Ex. G, Yohay Dep. p. 11)

**Response.**      Undisputed.

14.     Plaintiff is insulin-dependent and occasionally suffers from hypoglycemia (low blood sugars) which can cause severely reduced mental/physical abilities and/or loss of consciousness.  (Ex. H, Pl. Dep. p. 16; Ex. G, Dr. Yohay Dep. pp. 10-11)

**Response.**     Disputed to the extent the cited testimony and exhibits do not support the general conclusion that hypoglycemia can cause severely reduced mental/physical abilities.

15.     Dr. Yohay has diagnosed Plaintiff's Type-I diabetes as "Uncontrolled" no less than fifteen (15) times between June 6, 2011 and August 25, 2015. (Ex. G, Dr. Yohay Dep. pp. 51, 59, 65, 67, 72-73, 97, 105, 107-108, 110, 118, 123-124, 129, 134 and Exhibits 20, 23-25, 27-28, 39, 42-44, 50, 56-57, 61, 63 thereto)

**Response.**     Disputed.  The cited testimony and exhibits do not establish that Dr. Yohay has diagnosed Plaintiff's Type-I diabetes "as 'Uncontrolled' no less than fifteen (15) times between June 6, 2011 and August 25, 2015."  Much of the cited testimony and exhibits do not establish diagnoses of "uncontrolled" Type-I diabetes at all.

16.     Dr. Yohay testified that Plaintiff may have had a history of hypoglycemic unawareness; meaning she was sometimes unable to realize the symptoms of her blood sugars becoming too low. (Ex. G, Dr. Yohay Dep. pp. 137-138, Exhibit #63 thereto)

**Response.**     Disputed.  The cited testimony and exhibit does not establish that Plaintiff "may" have had a history of hypoglycemic unawareness.  Instead, Dr. Yohay testified that "[a]ll diabetics are at risk for hypoglycemic awareness."  (Ex. G. Dr. Yohay Dep. pp. 137-138). Exhibit 63 does not mention Plaintiff's "history of hypoglycemic unawareness." (Exhibit 63).

**D.     Plaintiff's Employment with ISP**

17.     Plaintiff joined the ISP Training Academy on August 21, 2011. (Ex. H, Pl. Dep. p. 25)

**Response.**     Undisputed.

18.     On April 20, 2011, Dr. Yohay represented to the ISP Training Academy that Plaintiff's diabetes would not result in any restrictions to Plaintiff and that Plaintiff's diabetes was "well-controlled." (Ex. G, Dr. Yohay Dep. pp. 49-50, Ex. 19 thereto)

**Response.**     Undisputed.

19.     Dr. Yohay was and is unaware of the training that Plaintiff participated in at the ISP Police Academy. (Ex. G, Dr. Yohay Dep. pp. 49-50, 58-59, 142)

**Response.**     Disputed in part.  The cited testimony does not establish that Dr. Yohay is currently unaware of Plaintiff's training at the ISP Police Academy.

20.     Plaintiff graduated from the ISP Academy in February 2012. (Ex. H, Pl. Dep. p. 35)

**Response.**     Undisputed.

21.     In February 2012, Plaintiff began her employment with ISP as a Trooper and was assigned to ISP District 2, which includes DuPage County, Illinois, Lake County, Illinois, DeKalb County, Illinois, McHenry County, Illinois and part of Cook County, Illinois. (Ex. H, Pl. Dep. p. 35)

**Response.**     Undisputed.

22.     Plaintiff began her employment as a Trooper in the Field Training program for 14 weeks during which she rotated between the morning (6:00 a.m. to 4:00 p.m.), afternoon (2:00 p.m. to midnight) and midnight shifts (10:00 p.m. to 8:00 a.m.).  (Ex. H, Pl. Dep. pp. 40-42)

**Response.**     Disputed to the extent the cited testimony does not establish the time frame for the afternoon shift.

23.     Plaintiff was permanently assigned to the midnight shift sometime after May 2012 and worked the midnight shift as a Trooper until February 28, 2013. (Ex. H, Pl. Dep. p. 43)

**Response.**     Undisputed.

24.     Plaintiff was required to perform overtime detail outside of her normal shift assignment when District 2 was short a Trooper on a particular shift, for federal hirebacks (seat belt detail, alcohol detail, etc.), roadside safety checks, traffic accidents and criminal investigations. (Ex. H. Pl. Dep. pp 44-45; 246-251, Ex. 31 thereto)

**Response.**     Disputed in part.  The cited testimony does not establish that Plaintiff was

required to perform overtime detail for traffic accidents and criminal investigations.

25.     Plaintiff was also required to be available 24-hours a day 7-days a week for emergency call-ups for state emergencies such as natural disasters, severe weather, prison riots, manhunts or civil unrest. (Ex. H, Pl. Dep. pp. 246-251, Ex.31 thereto, Ex, B, Kilby Dep. pp. 59-63, Ex. A, Abbott Dep. pp. 45-47, Ex. C, Kindred-Johnson Dep. pp. 70-71)

**Response.**     Disputed in part. The cited testimony does not establish that Plaintiff was

needed for prison riots, manhunts or civil unrest.

26.     Plaintiff carried a handgun (Glock .22) and drove an ISP patrol car as part of her job duties as a Trooper.  (Ex. H, Pl. Dep. pp. 49-50, 246-251, Ex. 31 thereto)

**Response.**     Disputed to the extent that the cited testimony and exhibits only establish

that Plaintiff had the ability to operate and maintain assigned police vehicles and equipment.

27.     Plaintiff became a member of Fraternal Order of Police, Lodge 41 after she began her employment as a Trooper and the terms and conditions of her employment were subject to a collective bargaining agreement, RC-164. (Ex. H, Pl. Dep. pp. 50, 238-240, Ex. 29 thereto)

**Response.**     Disputed to the extent Defendant offers an improper legal conclusion as to

the terms and conditions of Plaintiff's employment as a "fact."  Further disputed to the extent the

cited testimony only establishes that Plaintiff did not know what collective bargaining agreement

was active at the time she joined the Fraternal Order of Police.

28.     RC-164 allowed that shift assignments be awarded by seniority through a shift bidding system for Troopers in Lodge 41. (Ex. H, Pl. Dep. pp. 237-238, Exs. 28-30 thereto)

**Response.**     Undisputed.

29.     In August 2012, Plaintiff submitted a Shift Bid Preference in which she listed day shift as her first preference, midnight shift as her second preference and afternoon shift as her third preference.  (Ex. H, Pl. Dep. pp. 239-242, Exs. 29-30 thereto)

**Response.**     Undisputed.


30.     Per the shift bidding system, Plaintiff was awarded her second preference of midnight shift due to her low seniority.  (Ex. H, Pl. Dep. pp. 241-245, Exs. 29-30 thereto)

**Response.**     Disputed.  None of the cited testimony establishes the reason Plaintiff was awarded her second preference of midnight shift.


**E.     Plaintiff's December 28, 2012 Hypoglycemic Episode**

31.     Plaintiff's mother called the Lisle Fire Department on December 28, 2012 because Plaintiff had "said something funny" during a phone call with Plaintiff's mother.  (Ex. H, Pl. Dep. p. 55)

**Response.**     Disputed.  The cited testimony does not include the quoted language.


32.     On December 28, 2012, ISP District 2 dispatch received a call from ISP Trooper Jennifer Kirincich, Plaintiff's sister, informing them that Plaintiff's mother had called Jennifer Kirincich and let her know that she suspected that Plaintiff was having a hypoglycemic reaction based on the sound of Plaintiff's voice on the telephone. (Ex. F, Santos Dep. pp. 35-38, Group Ex. 1 thereto Bates Nos. ISP004175, ISP004176, ISP006598, ISP006599)

**Response.**     Disputed in part.  Neither the cited testimony nor Group Exhibit 1, Bates No. ISP006599 establishes any of the facts asserted above and instead establishes Brian Windle's opinion of Plaintiff, as well as the Medical Review Board's recommendations for Plaintiff's Independent Medical Evaluation.

33.     Following Trooper Jennifer Kirincich's call to ISP District 2, ISP District 2 contacted the Lisle Fire Department which responded to Plaintiffs home. (Ex. F, Santos Dep. pp. 35-38, Group Ex. 1 thereto Bates Nos. ISP004165 and ISP004175, Ex. J, Santos Affidavit and Group Ex. 1 attached thereto, Bates No. ISP004165)

**Response.**     Disputed in part.    Santos' cited testimony does not establish any of the facts asserted above and instead establishes Santos' familiarity with Medical Review Board Exhibits.

34.     On December 28, 2012, the Lisle Fire Department picked the lock at Plaintiff's residence to gain access. (Ex. H, Pl. Dep. p. 54)

**Response.**     Disputed. In the cited testimony, Plaintiff establishes only that "someone," and not necessarily the Lisle Fire Department, picked the lock at her residence to gain access. (Ex. H, Pl. Dep. p. 54)

35.     On December 28, 2012, the Lisle Fire Department found Plaintiff semi-conscious, woke her, talked with her, tested her blood sugar, and determined that she was hypoglycemic. (Ex. H, Pl. Dep. p. 54; Ex. F, Santos Dep. pp. 35-38, Group Ex. 1 thereto Bates Nos. ISP004175-ISP004176, ISP006598, ISP006599, Ex. J, Santos Affidavit and Group Ex. 1 attached thereto, Bates No. ISP004165)

**Response.**     Disputed.  Plaintiff's cited testimony does not establish any of the facts asserted above apart from that fact that she was woken and her blood sugar was tested.  Further, Santos' cited testimony does not establish any of the facts asserted above, but instead establishes Santos' familiarity with the above-referenced exhibits.  The cited document only references "minor treatment."

36.     On December 28, 2012, the Lisle Fire Department treated Plaintiff and she became responsive and was not transported to the hospital. (Ex. F, Santos Dep. pp. 35-38, Group Ex. 1 thereto Bates Nos. ISP004175, ISP004176, ISP006598-ISP006599)

**Response.**     Undisputed.

37.    On December 28, 2012, ISP Troopers Michael Young and Lt. Michael Kraft went to Plaintiff's residence to check on her wellbeing after she had been treated by the Lisle Fire Department. (Ex. H, Pl. Dep. pp. 55-58; Ex. F, Santos Dep. pp. 35-38, Group Ex. 1 thereto Bates Nos. ISP004175, ISP004176, ISP006598-ISP006599)

**Response.**    Disputed to the extent that, in the cited testimony, Santos does not establish any of the facts asserted above. Further disputed to the extent that Group Ex. 1 Bates Nos. ISP004175, ISP004176, ISP006598-ISP006599 do not establish any of the facts asserted above.

38.    On January 14, 2013, Dr. Yohay's office received a call from a friend of Plaintiff's who reported to Dr. Yohay that Plaintiff had gone to the emergency room because of low blood sugar. (Ex. G, Dr. Yohay Dep. p. 70-72, Ex. 26 thereto)

**Response.**    Undisputed.

## F.    Plaintiff's February 28, 2013 Automobile Accident Caused by Hypoglycemia[1]

39.    On February 28, 2013, Plaintiff became hypoglycemic while driving an ISP patrol car towards the end of her shift. Unaware that she was suffering from low blood sugar, Plaintiff drove the ISP patrol car erratically for several miles, ran a red light, drove over the dotted center line (dividing the lanes in her direction of travel) no less than 11 times, drove over the solid-yellow center line, twice struck a civilian car in the rear and while traveling at a high rate of speed, eventually struck several cars stopped at a red-light. First responders from Wheaton, Carol Stream, DuPage County, and the ISP rushed to the scene, fire fighters were forced to cut the roof off of Plaintiff's patrol car to extricate her, and she was taken to a hospital by ambulance. Four other vehicles were seriously damaged in the crash. (Ex. H, Pl. Dep., pp. 78-84, Ex. 1 thereto, Ex. I, February 28, 2013 Dashcam Video from Plaintiff's patrol car and February 28, 2013 Dashcam Video from the Carol Stream patrol car driven by Officer Donnae Pope; Ex. J, Santos Affidavit Group Ex. 1 attached thereto, Bates Nos. ISP008040-ISP008045).

**Response.**    Disputed to the extent that none of the cited testimony establishes that on February 28, 2012, Plaintiff became hypoglycemic while driving in ISP patrol car toward the end of her shift, that Plaintiff was unaware that she was suffering from low blood sugar, or any of the other cited facts of the accident or events that preceded it.

---

[1] Plaintiff objects to each of Defendant's headings as an improper attempt to editorialize and color the factual allegations that follow. Plaintiff contests the factual implications in each of those headings and further notes that they are without citation to any record evidence and must be disregarded. See LR 56.1(a).

40.     Plaintiff has no memory of the February 28, 2013 accident between the time she drove the patrol car away from a gas station at North Avenue and Swift Road and when she spoke with paramedics at the scene of the third automobile accident. (Ex. H, Pl. Dep. pp. 80-82, Ex.1 thereto)

**Response.**     Disputed to the extent that, neither the cited testimony, nor the cited exhibit establishes that there was a third accident (or a second accident, for that matter).

41.     Following the February 28, 2013 automobile accident, Plaintiff was transported to Central DuPage Hospital, treated and released.  (Ex. H, Pl. Dep. pp. 83-84)

**Response.**     Undisputed.

**G.     Plaintiff's Case Referred to ISP Medical Review Board**

42.     Based on the December 28, 2012 hypoglycemic incident at Plaintiff's home and the February 28, 2013 motor vehicle accident resulting from Plaintiff's hypoglycemic unawareness, ISP referred Plaintiff to its Medical Review Board ("MRB") for evaluation of Plaintiff's fitness for duty as a Trooper. (Ex. F, Santos Dep. pp.22-24; Group Ex. 1 thereto Bates No. ISP 004194)

**Response.**     Disputed to the extent the cited testimony and exhibit do not establish that ISP referred Plaintiff to its MRB for evaluation of Plaintiff's fitness for duty or any "hypoglycemic unawareness."

43.     On March 11, 2013, Abbott sent Plaintiff a letter informing her that her case had been referred to the MRB.  (Ex. F, Santos Dep. pp. 34-35, Group Ex. 1 thereto, Bates No. ISP004167)

**Response.**     Disputed to the extent that the cited testimony does not establish that Abbott sent the letter to Plaintiff on March 11, 2013.  The testimony instead only establishes Santos' recognition of and familiarity with the letter.  (Ex. F, Santos Dep. pp. 34-35, Group Ex. 1 thereto, Bates No. ISP004167)

44.     On or before March 20, 2013, Santos prepared a case history to give to the members of the MRB that provided the MRB with the history and background of Plaintiff's December 28, 2012 hypoglycemic incident at Plaintiff's home and the February 28, 2013 motor vehicle accidents resulting from Plaintiff's hypoglycemic unawareness. (Ex. F, Santos Dep. pp. 35-36, Group Ex. 1 thereto, Bates No. ISP004175)

**Response.**     Disputed to the extent neither the cited testimony nor exhibit refers to any

"hypoglycemic unawareness."


45.     On March 20, 2013, Plaintiff appeared before the MRB, the MRB listened to Plaintiff's testimony and watched the dashcam videos of the February 28, 2013 crash involving Plaintiff's ISP patrol car.  (Ex. F, Santos Dep. pp. 24-34; Group Ex. 1 thereto, Bates No. ISP004195, Ex. C, Kindred-Johnson Dep. p. 79, Ex. A, Abbott Dep. p. 26)

**Response.**     Disputed to the extent that Santos' cited testimony does not establish that

MRB watched the dashcam videos of the February 28, 2013 crash.  Further, Kindred-Johnson's

cited testimony does not establish that Plaintiff appeared before the MRB on March 20, 2013,

nor does it establish that the MRB listened to Plaintiff's testimony.


46.     Following the March 20, 2013 MRB meeting with Plaintiff, the MRB recommended that Plaintiff be referred for an Independent Medical Evaluation ("IME") to assess her diabetes in relation to her abilities to perform the essential functions of a Trooper.  (Ex. F, Santos Dep. pp. 36-37, Group Ex. 1 thereto, Bates No. ISP 004176 and Bates No. ISP 006598)

**Response.**     Undisputed.

47.     The MRB consulted with its Chief Medical Officer, Dr. Yambert, who recommended that Plaintiff be sent to Dr. Shajauddin Valika, ("Dr. Valika") an endocrinologist, for her IME. (Ex. F, Santos Dep. 38-45, Group Ex. 1 thereto, Bates Nos. ISP001808, ISP 004168, ISP004197-004198)

**Response.**     Disputed in part.  None of Santos' cited testimony establishes that Dr.

Yambert recommended that Plaintiff be sent to Dr. Valika for her IME.  Further, none of the

cited exhibits establish that Dr. Yambert recommended that Plaintiff be sent to Dr. Valika for her

IME.  Further, Santos testified that it was the MRB's decision, not Dr. Yambert, for Plaintiff to

be referred to an endocrinologist.

48.     On April 9, 2011, ISP informed Dr. Valika about Plaintiff's December 28, 2012 hypoglycemic episode and the February 28, 2013 auto accidents caused by Plaintiff's hypoglycemia, provided Dr. Valika with the dashcam videos of the February 28, 2013 auto accidents, and provided Dr. Valika a job description for a Trooper and an ISP Medical Evaluation Form.  (Ex. F, Santos Dep. pp. 44-53, Group Ex. 1 thereto, Bates Nos. ISP001807, ISP001808, ISP003655, ISP003656, ISP003658, ISP004230, ISP005371)

**Response.**     Disputed in part.     Neither the cited testimony nor exhibits refer to

"hypoglycemia" nor the cause of Plaintiff's auto accident.     Further, the cited evidence does not

support the fact that a job description for a Trooper was provided to Dr. Valika.


49.     ISP asked Dr. Valika to answer the following questions about Plaintiff *via* his IME: "Can she physically perform the essential functions of her position based on the attached job description and task analysis? Is her condition currently controlled? Can it be controlled to the extent that she does not present a direct threat given her job duties and responsibilities? Is it safe for her to drive a squad car and carry a weapon? Does she have any restrictions, and if so, are those restrictions permanent?" (Ex. F, Santos Dep. pp. 46-49, Group Ex. 1 thereto, Bates Nos. ISP001808)

**Response.**     Undisputed to the extent the cited exhibit contains the quoted language.


50.     On April 11, 2013, Dr. Valika conducted the IME of Plaintiff and in his report referred Plaintiff back to her regular endocrinologist, Dr. Yohay because Dr. Yohay "knows her [Plaintiff] for many years and she would be the best to judge regarding changes, whether [Plaintiff] is safe to drive, etc…. [Diabetes] is a chronic disease and cannot just be corrected in one day or one visit." (Ex. F, Santos Dep. p. 61, Group Ex. 1 thereto, Bates Nos. ISP004226-ISP004229)

**Response.**     Undisputed.


51.     Dr. Valika did not complete the ISP Medical Evaluation Form after the IME with Plaintiff.  (Ex. F, Santos Dep. pp. 62-64, Group Ex. 1 thereto, Bates Nos. ISP004230-ISP004231)

**Response.**     Undisputed.


52.     On May 6, 2013, ISP requested that Dr. Valika provide an addendum to his April 11, 2013 IME and complete the ISP Medical Evaluation Form.  (Ex.  F, Santos Dep. pp. 62-64,

Group Ex. 1 thereto, Bates Nos. ISP004232, ISP004638, ISP004639, ISP004692, ISP004693, ISP004696)

**Response.**    Undisputed to the extent that the facsimile memorandum is dated May 6, 2013, but there is no evidence in the cited material as to whether it was sent to Dr. Valika's office on that date.


53.    On May 7, 2013, Dr. Valika sent ISP an addendum to his April 11, 2013 report of Plaintiff's IME. In his addendum, Dr. Valika recommended "1. [Plaintiff] needs close and tight monitoring of her blood sugar, including frequent pump downloads, using the glucose sensor, etc. 2. [Plaintiff] has an endocrinologist in Olympia Fields that she sees on a regular basis. She needs to follow up with her urgently. 3. Clearance for driving should be at the discretion of her treating endocrinologist." (Ex. F, Santos Dep. p. 76, Group Exhibit 1 thereto, Bates No. ISP004233)

**Response.**    Undisputed.


54.    On May 29, 2013, the MRB again met to discuss Plaintiff's fitness for duty and recommended that, since Dr. Valika would not complete the ISP Medical Evaluation Form nor provide answers to the previously posed questions regarding Plaintiff's fitness for duty, ISP should review Plaintiff's Police Academy records before moving forward. (Ex. F, Santos Dep. pp. 79-81, Group Ex. 1 thereto, Bates Nos. ISP006639-ISP006640)

**Response.**    Disputed. Neither Santos' cited testimony nor the cited exhibit pages refer to a "fitness for duty" evaluation at the May 29, 2013 meeting, and only state that "On May 29, 2013, the Board recommended a review of [Plaintiff's] medical records from the Academy before moving forward."


55.    On or before June 7, 2013, ISP received a note from a Dr. Mary Connolly that indicated that Plaintiff's work status was "Trial of full duty." (Ex. F, Santos Dep. p. 59, Group Exhibit 1 thereto, Bates No. ISP004169, Ex. H, Pl. Dep. pp. 107-112, Exhibit 4 thereto)

**Response.**    Disputed in part. Neither Santos' nor Plaintiff's cited testimony or Exhibits establish that ISP received the note from Dr. Mary Conolly regarding a "trial." Instead, the cited testimony only refers to an email from a Mr. Gleason (with whom Santos was

13

unfamiliar and who has an unknown position with the MRB), who wrote "I have a note from Dr. Connolly stating that [Plaintiff] may return to full duty as of April 1st, 2013, right?" (Ex. F, Santos Dep. p. 60).

56.    On June 19, 2013 the MRB met again to discuss Plaintiff's fitness for duty as a Trooper and recommended that Plaintiff be referred to an occupational health assessment unless ISP's legal department determined such an evaluation was unnecessary. (Ex. F, Santos Dep. pp. 53-56, Group Ex. 1 thereto, Bates No. 006125)

**Response.**    Disputed to the extent the cited testimony and exhibit only refer to a recommendation for an "occupational evaluation" only.

57.    On June 21, 2013, the MRB held a special meeting to discuss Plaintiff's case and determined that, because Dr. Connolly's note stated that Plaintiff could return to "Trial of full duty" and ISP could not allow a trial of full duty, Plaintiff should be referred to the ISP Equal Employment Opportunity Office to begin the reasonable accommodation process. (Ex. F, Santos Dep. pp.; 79-83, Group Ex. 1 thereto, Bates No. ISP006596; Ex. C, Kindred-Johnson Dep. pp. 53-70, 86-87; Ex. A, Abbott Dep. pp. 8-10; Ex. B, Kilby Dep. pp. 35-43; Ex. D, Rizzs Dep. pp. 43-50)

**Response.**    Disputed.  None of the cited testimony supports the "fact" that "ISP could not allow a trial of full duty," or that Plaintiff was referred to ISP's Equal Employment Opportunity Office.

58.    On September 19, 2013, ISP sent Plaintiff a letter informing her that she was unable to perform the essential functions of a sworn officer and that she could not continue her employment as a Trooper.  The September 19, 2013 letter gave Plaintiff the following options: (1) request a vocational assignment to a non-sworn position as a reasonable accommodation through the ISP Office of Equal Employment Opportunity while working in a limited duty status, or (2) resign her employment.  (Ex. H, Pl. Dep. pp. 124-126, Ex. 7 thereto)

**Response.**    Undisputed as to the fact that Plaintiff received the referenced letter which is correctly paraphrased above.

59.    According to Plaintiff, the only difference between a sworn and non-sworn position at ISP is that employees in sworn positions swear an oath upon graduation from the ISP

Police Academy and employees in non-sworn positions do not swear an oath.  (Ex. H, Pl. Dep. p. 128)

**Response.**     Disputed to the extent that Plaintiff's testimony made clear that she did not know all the differences between sworn and unsworn positions.

## H.     Plaintiff is offered a Reasonable Accommodation[2]

60.     On November 5, 2013, Sgambelluri and Master Sergeant Christy White ("White") met with Plaintiff to discuss whether Plaintiff was interested in pursuing a non-sworn position through the ISP's accommodation process.  (Ex. H, Pl. Dep. pp. 144-145, Ex. 10 thereto)

**Response.**     Undisputed.

61.     Following the November 5, 2013 meeting with Sgambelluri and White, on November 19, 2013, Plaintiff submitted to ISP's EEO office a CMS Examining/Employment Application ("CMS-100") and a State of Illinois Reasonable Accommodation Request for Employees form. (Ex. H, Pl. Dep. pp. 131-148, Exhibits 8 and 11 thereto)

**Response.**     Undisputed.

62.     On her November 19, 2013 State of Illinois Reasonable Accommodation Request for Employees form, Plaintiff requested as an accommodation a "Patrol change to a day shift" and in the narrative explanation stated, "Night shift causes my blood sugar levels to become unstable and lead to complications for (sic) my diabetes.  My endocrinologist has advised me that working exclusively on a day shift would alleviate the possibility that my blood sugar levels will become unbalanced and (sic) me to fully perform my duties without complications."  (Ex. H, Pl. Dep. pp. 131-139, Ex. 8 thereto)

**Response.**     Undisputed to the extent the cited exhibit is correctly quoted.  Disputed to the extent this "fact" includes the improper legal conclusion of an "accommodation."  Further disputed as the cited testimony does not support the fact that the quoted language was the *only* "accommodation" Plaintiff would accept.

---

[2] Plaintiff continues to object to each of Defendant's headings as an improper attempt to editorialize and color the factual allegations that follow.  Plaintiff contests the factual implications and legal conclusion in this heading, which is without citation to any record evidence.

63.   On December 2, 2013 Plaintiff's counsel, Ethan White ("White"), sent to Sgambelluri a November 26, 2013 letter from Dr. Yohay which was written on behalf of Plaintiff and stated that "It is my opinion, as her treating physician, with knowledge of her duties, responsibilities, and conduct required of her as an Illinois State Trooper, than an assignment to a day shift would allow her to fully, completely, and safely perform all of her Illinois State Trooper patrol duties." (Ex. H, Pl. Dep. pp. 139-142, Ex. 9 thereto, December 2, 2013 email from White to Sgambelluri, Bates No. ISP004632)

**Response.**   Disputed as neither the cited testimony nor exhibit include an email from Plaintiff's counsel.

64.   Dr. Yohay was not aware of Plaintiff's job requirements as a State Trooper in any detail, but knew that Plaintiff was a State Trooper, that she carried a badge and assumed that she regularly drove a vehicle for a prolonged period of time. (Ex. G, Dr. Yohay Dep. pp. 87-88, 92-93, 99, 114, 132)

**Response.**   Disputed to the extent the cited testimony is included out of context.  In full, Dr. Yohay testified that, when writing that Plaintiff's diabetes "should not affect her job performance," the sentence meant "that her job performance was performed adequately before the accident and not affected by her diabetes, and I expect her job performance to continue after the accident not affected by the diabetes."  (Ex. G, Dr. Yohay Dep. pp. 88).

65.   On December 3, 2013, Sgambelluri emailed a letter to Plaintiff informing her that her request for a patrol change to day shift was in conflict with the request for a reassignment to a non-sworn position. (Ex. H, Pl. Dep. pp. 144-146, Ex. 10 thereto)

**Response.**   Undisputed.

66.   On December 3, 2013 Plaintiff's counsel, Ethan White, sent Sgambelluri an email stating "Thanks for your letter. We respond that Kirincich is attempting to comply with the interactive process, but confirms that she seeks the reasonable accommodation of an assignment to a sworn position on the day shift, as supported by Dr. Yohay's recommendation." (Ex. H, Pl. Dep. pp. 148-152, Ex. 12 thereto)

**Response.**   Undisputed.

67.   On December 9, 2013, Sgambelluri sent Plaintiff a letter *via* email stating "Your request for reasonable accommodation is denied. The Department has determined that your

request will not reasonably accommodate you in such a manner as to ensure you are able to perform the essential functions of a sworn officer. Through the interactive process and our review of the events surrounding your traffic crash and your medical records, the Department has determined that the only reasonable accommodation available to you is a vocational reassignment to a code position. While you have not made a request to date, the Department encourages you to continue to participate in the interactive process and pursue a vocational reassignment to a civilian position." (Ex. H, Pl. Dep. pp. 152-154, Exhibit 13 thereto)

    **Response.**    Undisputed.


68.    On December 18, 2013 the MRB met again and discussed Plaintiff's status. During this meeting they discussed Dr. Yohay's opinion that Plaintiff's assignment to a day shift would allow her to fully perform the essential functions of the position of State Trooper and decided that a move only to day shift would not allow Plaintiff to safely and fully perform the essential functions of a State Trooper. (Ex. F, Santos Dep. p. 22, Group Exhibit 1 thereto, Bates No. ISP006662-ISP006663; Ex. C, Kindred-Johnson Dep. pp. 70-71)

    **Response.**    Disputed to the extent the cited exhibit does not establish the "decision,"

as state above.  Rather, the exhibit only establishes that Plaintiff "was denied the reasonable

accommodation to the day shift as a Trooper."  Further, Kindred-Johnson's cited testimony does

establishes nothing more than her rejection of Dr. Yohay's medical opinion.


69.    Effective January 9, 2014 and ending on February 17, 2015, Plaintiff worked full-time in a restricted duty status while participating in the reasonable accommodation process. (Ex. H, Pl. Dep. pp. 154-156, 227-228, 234-236 and Exs. 14 and 27 thereto)

    **Response.**    Disputed to the extent that the cited testimony and exhibits only establish

that Plaintiff received a letter from ISP, dated February 17, 2015, informing her of the fact that

she was to be placed on an administrative leave of absence.


70.    On October 3, 2014, ISP invited Plaintiff to interview for a Guard II position with ISP at the James R. Thompson Center in Chicago.  Plaintiff attended this interview.  (Ex. H, Pl. Dep. pp. 162-164, Ex. 15 thereto)

    **Response.**    Disputed.  Neither Plaintiff's cited testimony nor exhibit establish that

Plaintiff was invited to interview for the Guard II position on October 3, 2014.

71.     On December 4, 2014, ISP invited Plaintiff to interview for a Truck Weighing Inspector position in Will County.  Plaintiff attended this interview.  (Ex. H, Pl. Dep. pp.165-166, Ex. 16 thereto)

**Response.**     Undisputed.


72.     On December 18, 2014, ISP offered Plaintiff the Guard II position at a salary of $4,137.00 per month and the Truck Weighing Inspector position at a salary of $4,913 per month. (Ex. H, Pl. Dep. pp. 167-168, Ex. 17 thereto)

**Response.**     Undisputed.


73.     On December 26, 2014, Plaintiff sent ISP a letter accepting the Truck Weighing Inspector position.  (Ex. H, Pl. Dep. pp. 168-172, Ex. 18 thereto)


**Response.**     Undisputed.


74.     Sometime after December 26, 2014, ISP sent Plaintiff an ISP Officer Action Request requiring that she resign her position as a Trooper with ISP in order to accept a position as a Truck Weighing Inspector in Frankfurt, Illinois.  (Ex. H, Pl. Dep. pp.190-192, Ex. 19 thereto)

**Response.**     Undisputed.

75.     On January 15, 2015 Plaintiff sent a letter to ISP indicating that she again elected to accept the Truck Weighing Inspector position but that she was doing so under threat of termination. (Ex. H, Pl. Dep. pp. 193-194, Ex. 20 thereto)

**Response.**     Undisputed.


76.     On January 15, 2015, Plaintiff sent ISP a completed ISP Officer Action Request, where in Part D next to the words Departure-Type the word "resignation" was redacted.  Also on the January 31, 2015 Officer Action Request under Part D the box marked "Other" was checked. Under the Comments section on the Officer Action Request, the Plaintiff redacted the word "resigned" and replaced with "end her" and wrote "She is not resigning.  The ISP will not accommodate her requests under the ADA" (Ex. H, Pl .Dep. pp. 194-213, Ex. 21 thereto)

**Response.**     Disputed.  Plaintiff's cited testimony and exhibit does not establish the

facts asserted above.  The cited testimony and exhibits do not establish that Plaintiff sent ISP a

completed ISP Officer Action Request on January 15, 2015. Further, Defendant incorrectly

states that the details of the January 15, 2015 ISP Officer Action Request. In the *January 31,*

*2015* ISP Officer Action Request and (not the January 15, 2015 version), under Part D, the word

"resignation" was redacted and the box marked "Other" was checked. Plaintiff did not testify

she made those changes and instead indicated counsel made those changes.


77.　　On January 21, 2015, ISP sent Plaintiff a letter informing her that, despite her alterations to the Officer Action Request, ISP acknowledged that she had resigned her position as a sworn officer and accepted the Truck Weighing Inspector position and was expected to report to work at said position on February 1, 2015. (Ex. H, Pl .Dep. pp. 213-218, Ex. 22 thereto)

**Response.**　　Disputed. Neither the cited testimony nor exhibit support the fact that ISP

"acknowledged" Plaintiff had resigned. Rather, the cited evidence only supports that ISP

claimed, in response to Plaintiff's counsel's changes to the January 31, 2015 ISP Officer Action

Request, that those change "do[] not alter the effect of the document."


78.　　On January 27, 2015, ISP sent Plaintiff a letter inviting her to interview for a position with ISP as a Criminal Intelligence Analyst in Tinley Park Illinois. Plaintiff accepted the interview. (Ex. H, Pl. Dep. pp. 218-221, Ex. 23 thereto)

**Response.**　　Undisputed.


79.　　On February 9, 2015, ISP offered Plaintiff the position of Criminal Intelligence Analyst at a salary of $5,740.00 per month. (Ex. H, Pl. Dep. pp. 221-223, Ex. 24 thereto)

**Response.**　　Undisputed.


80.　　On February 9, 2015 ISP sent Plaintiff a letter informing Plaintiff that ISP had identified and offered three separate positions as a result of the Reasonable Accommodation process and that if Plaintiff declined the Truck Weight Inspector position or the Criminal Intelligence Analyst position, ISP would consider her withdrawn from the Reasonable Accommodation process. (Ex. H, Pl. Dep. pp. 225-226, Ex. 26 thereto)

**Response.**　　Undisputed.

81.     Plaintiff did not report to work for the Truck Weighing Inspector position nor did she report to work for the Criminal Intelligence Analyst position.  (Ex. H, Pl. Dep. pp. 226-227)

**Response.**     Undisputed.


82.     On February 17, 2015, ISP sent Plaintiff a letter informing her that it considered her withdrawn from the interactive Reasonable Accommodation process offered by ISP and also informing her that she was being placed on administrative leave.  (Ex. H, Pl. Dep. pp. 233-236, Ex. 27 thereto)

**Response.**     Undisputed.


83.     Plaintiff is not aware of any other ISP Troopers who have diabetes and have been involved in car while accidents on duty because of their hypoglycemia. (Ex. H, Pl. Dep. pp. 189-190)

**Response.**     Disputed.  Plaintiff's cited testimony does not establish the facts asserted above.  Plaintiff's cited testimony instead establishes that of the individuals that she had identified in her deposition, none were involved in car accidents while on duty because of their hypoglycemia.  Plaintiff's cited testimony does not support the broader proposition, above.


84.     Dr. Yohay opined that one of the possible causes of Plaintiff's February 28, 2013 motor vehicle accident was hypoglycemic unawareness.  (Ex. G, Dr. Yohay Dep. p. 137-138)

**Response.**     Disputed as Dr. Yohay only testified that "hypoglycemic unawareness" was "one hypothesis," not her opinion.


85.     Dr. Yohay counseled Plaintiff to check her blood sugars before driving because severe low blood sugar could result in Plaintiff getting into a car accident. (Ex. G, Dr. Yohay Dep. pp. 68-69)

**Response.**     Undisputed.


86.     The ISP Sworn Salary Schedule effective July 1, 2012 provided that the monthly salary for a 1-year Trooper was $4,809.00.  (Ex. H, Pl. Dep. pp. 251-253, Exhibit 29 thereto, Bates No. ISP0123)

**Response.**     Undisputed.


87.     The ISP Sworn Salary Schedule effective July 1, 2013 provided that the monthly salary for a 2-year Trooper was $5,139.00.  (Ex. H, Pl. Dep. pp. 251-253, Exhibit 29 thereto, Bates No. ISP0124)

**Response.**     Undisputed.


88.     The ISP Sworn Salary Schedule effective July 1, 2014 provided that the monthly salary for a 3-year Trooper was $5,620.00.  (Ex. H, Pl. Dep. pp. 251-253, Exhibit 29 thereto, Bates No. ISP0125)

**Response.**     Undisputed.


Date:    March 24, 2016                              RESPECTFULLY SUBMITTED,


                                                    By:     /s/ Michael I. Leonard
                                                            Counsel for Plaintiff


**LEONARDMEYER LLP**
Michael I. Leonard
Ethan E. White
John P. Killacky
120 N. LaSalle Drive
Suite 2000
Chicago, Illinois 60602
(312) 374-8084 (phone)
(312) 264-0671 (fax)

## CERTIFICATE OF SERVICE

I, Michael I. Leonard, an attorney, hereby certify that the attached *Plaintiff's Response to Defendant's Statement of Undisputed Facts* was served via the CM/ECF filing system on March 24, 2016 to all counsel of record.

**By:**   /s/ Michael I. Leonard

**LEONARDMEYER LLP**
Michael I. Leonard
Ethan E. White
John P. Killacky
120 N. LaSalle Drive
Suite 2000
Chicago, Illinois 60602
(312) 374-8084 (phone)
(312) 264-0671 (fax)